, Thank you, Your Honor. May it please the court. This case is concerning a young woman's right not to participate in the Pledge of Allegiance, a right that was originally one of the earliest cases really on civil rights back in 1943 when during the middle of World War II, the United States Supreme Court decided that students do not have to stand or participate in the Pledge of Allegiance. So it's one of the earliest freedom of speech cases on record. Now, one of the arguments of the defendants is that the Texas law regarding the education code, since we didn't challenge that, that somehow also protects the school's implementation. But the Texas education code only does not talk directly to students or to parents. What it does is it directs school boards to do something. And in this case, the school board not only did they not, they did it incorrectly, but even if they, it is determined that their particular implementation of the Texas education code is correct, why the Ms. Arsenault, the mother of Marie Oliver, did comply with the notice requirement. Most notably... Are you talking about the exemption? Right. That is correct, Your Honor, because the Texas law, to be constitutional, first of all, since the Texas law does not tell Marie to do anything or tell the mother to do anything, it only tells the school districts to do something, of course, I don't know how they could challenge that because it doesn't seem that they would not even have standing. So when the school district went ahead and implemented this law, they adopted the language, which they did not have to do, because the law does not say you have to adopt this exact language. You can implement the statute however you would want, such as they could have included that here is an opt-out form on our computer. Sign that. That'll be good. They could have stated contact the school board, and here's the address to the school board, do that. They could have said anything, however, what they did is they just left it open for the mother's interpretation, and she did provide notice in the form of email. Was there only one notice or were there two? There were two notices, Your Honor, approximately one year apart. Okay, that's what I thought. And tell us what each of those said. Well, the second one is not in contention because the district court agreed that that was proper notice, and furthermore, the only defendant that that really affects is not before us today. As a matter of fact, there's another case pending in this court where en banc is currently being considered in that case regarding the remaining individual. So, however, the notice that was sent by email I did ask you to tell us what each of the two notices said. Yes, Your Honor. I'll go into the first one, and that is, it's not too long, and bear with me, please. That's okay, I asked the question so you can answer it. I would like to change Mari's second period class from journalism to speech and debate with Ms. Richard. I know it's late in the year. It has come to my attention that Ms. Walton, I would have copied her here, but I could not find her in the directory by name or by searching for journalism, keeps giving Mari a hard time about not saying the Pledge of Allegiance in her class. When Mari sits quietly, she complains. When Mari stands quietly, she complains. I really don't think berating her in front of her peers and yelling at her is going to really sway Mari into seeing things her way. I think the faculty as a whole should know that students don't have to say the Pledge, but Mari does know she has to be respectful, and she is doing that. The best workaround I can see is for the move to the speech and debate class. It is the same period as journalism. Mari is on the debate team and is familiar with the classwork and can make a smooth transition. It seems as if Ms. Walton is uncomfortable having a student in her class that does not say the Pledge, and Mari is uncomfortable having a teacher yelling, scowling, and looking at her every time they have to say the Pledge in second period. Let me know if there is anything I need to facilitate this move. So that was the first notice. I'll take your time. I'll give you some extra time if you need. I know this is a long answer to my question. Yes, Your Honor. Now I don't, unfortunately, I know I cite to it in the record, and I do have, but I do know generally about it, that on November 14th, approximately one year later, the mother then emails Principal Greeny and Superintendent Champion, reminding them that Mari sitting through the Pledge, quotes, is not an opinion, it is a constitutional right, quotes, and that the burden of dealing with the harassment has been incorrectly put upon Mari. So unfortunately, I don't have the exact right. So what we have here is a young student, 17 years old, who now, by the way, is in college in another state and doing quite well, is that the burden is upon her, and when you take a right away to freedom of speech, they say, oh, well, you know what, our rule is kind of vague. That goes against you. What about the contract construction that contracts are usually construed against the drafters? The KISD is the ones who drafted this. Mari didn't draft it, and so when there is a notice to the school, that should be well enough. And furthermore, KISD could just simply have things in place. They could have sent out a flyer that said to all the faculty and staff, whenever a student does not want to stand for the Pledge, please notify us so we can notify the other teachers. There was some notifications that some teachers took it upon themselves and the principal took it upon themselves, which on several occasions didn't appear to be listened to. And then also, I think one has to look at the totality of the situation, not looking at each individual action and chopping it up, like, oh, there's 13 different actions. This one didn't quite make it. This one didn't quite make it. This one didn't quite make it. When you look at the totality of it, it's hard to imagine that anybody could find that there wasn't – she wasn't being – Sure. If you can do it succinctly, number one, zero in on where you see the district court erred, and number two, what is specifically the relief you're seeking from this panel? If you can answer those two somewhat succinctly, that will help me. Yes, the biggest error of the district court, and the main error, is that they did not consider that first email to be noticed under the statute. Their KISD policy, because once again, the statute itself is not directed at MARI. It doesn't tell MARI or the parents to do anything. It only directs school districts to do things. So when you look at the lengthy email she wrote where she talks about this Pledge of Allegiance and MARI's rights, it's hard to imagine that doesn't meet at least the minimum standards. And when you consider that this is KISD's policy, then it should have met the standard. And who's at fault for not informing teachers? Who's at fault for not having a simple form? Who's at fault for not making it very clear what they require? That would seem to be KISD, not parents, and not 14- to 17-year-old high school students. And the relief we are requesting is, she is now in college, so she's no longer in the independent school district, and so I don't believe we can get injunctive relief at this point, but we are seeking monetary damages for her mental anguish and suffering is the main thing. And also, because of some of the consequences, she did have to go see a counselor and other things for mental anguish. So that's the main what we have. And if there are no further questions, I'm going to end early. Thank you, Mr. Kalanick. Mr. Brush? Good morning, and may it please the court. As the court knows, my name is Jonathan Brush, and with my colleague Amy Dimler, I represent the Kline Independent School District, and Appelese Champion, Greeney, Hensley, Alexander, and Walton. My colleague, Mr. Valenzuela, represents Appelese Natesker and Richard. Beginning with the question Judge Stewart, you asked about what is the biggest error that plaintiff contended the court made, and counsel said that it was construing the November 2015 email as ineffective under the statute. The court did not err in making that determination. Chief Judge Rosenthal's analysis of the email was that it was equivocal and proposed a course of action rather than requesting that her daughter be exempted from saying the Pledge of Allegiance. Judge Rosenthal made that construction as a matter of law because she was determining the legal effect of a writing. It's not a fact question for a jury. It's a legal determination of what's the legal effect of the writing. Does Greeney's email suggest that he understood Arsenault's email as an exemption request? I don't think it does, Your Honor, because while Greeney certainly had that opinion, it could also have simply been that Greeney, and the testimony does bear this out, it was his practice to not require students to stand and recite the pledge if they did not want to. Now, even if Greeney understood the email to be an exemption request, it wouldn't change the result with respect to any of the defendants, and here's why, and I'll work through each of them in turn. With respect to the school district, it's a municipal liability claim, and the plaintiff has to show that there is an unconstitutional policy that's the moving force of a constitutional injury. They also have to show that it's the board's policy. The board had knowledge and the board was deliberately indifferent. Here, Oliver, as master of her own complaint, chose not to challenge the statute. She could have challenged the constitutionality of the statute. Even though counsel today suggested that it imposes an obligation on the school district, there are many instances where a statute imposes an obligation on the government that creates a tension with a plaintiff, and the plaintiff would have standing. That was a choice not to challenge the statute. So the statute, and in turn the district's policy, are presumed constitutional. They're facially valid. The municipal liability claim collapses at that point. Even if the court were to move beyond that point, there's no evidence that the board, the municipal policymaker, was aware of any of the instances that occurred other than instances involving students allegedly harassing Oliver. Now, Oliver's complaint was not based on student harassment, nor could it be because it's not state action. And even if the court were to consider it to be state action, the evidence is undisputed that the district responded to all of her complaints, which would negate a finding of deliberate indifference, right down to having the district's outside general counsel perform a training. So even if the court were to construe that 2015 email or to assume that Greeney understood it to be effective, it wouldn't affect the district's liability. The same is true of the supervisory individual defendants, all of whom must be held liable for their own conduct, not the conduct of anyone else, not students, not subordinates. The evidence is clear that in all cases they responded to Oliver's concerns, which again negates a finding of deliberate indifference. And with respect in particular to Walton, even if Greeney construed the email to be an opt-out, there's no case law that would tell Walton, as an individual defendant, that it was an effective opt-out. And what's more, the email wasn't even sent to her. And so Judge Rosenthal found, focusing on the point of error, that counsel highlighted, Judge Rosenthal found that even if the court were to construe that email as an effective opt-out, it still wouldn't matter because the individual defendants would have been entitled to qualified immunity because there was no case law existing at the time to tell a public educator what an effective opt-out looked like. And that's essential to put a governmental actor, particularly an educator, on notice of the contours of a plaintiff's constitutional right and the scope of restrictions on their conduct. With respect to the 2016 email that the court asked about, Judge Rosenthal found that to be an effective opt-out. Regardless of that finding, it wouldn't change the analysis. Judge Rosenthal correctly held that each of the defendants was entitled to summary judgment with respect to the school district and with respect to the supervisory defendants on the basis that they were not deliberately indifferent. There really is no briefing before the court today that meets this court's standards to challenge those findings. There is no citation to legal authority to show how the board or the supervisory defendants were deliberately indifferent, nor is there citation to the record. Essentially, that finding is unchallenged. As a matter of briefing in Federal Rule 28, any challenges have been waived. But even if the court were to find that they were not waived or forfeited, Judge Rosenthal correctly determined those issues. Regardless of how the court treats either of those emails, Judge Rosenthal correctly decided the case. If the court were to affirm Judge Rosenthal's finding that the 2015 email was not effective, then of course the court would affirm Judge Rosenthal in entirety. Even if the court disagreed, each of the individual defendants would still be entitled to qualified immunity. I think the court should find that it was not effective because to allow a public educator to know what course of conduct they are to take, I think an exemption or an opt-out needs to be clear and unequivocal. And we know that Oliver's mother was capable of writing that because she did, according to Judge Rosenthal, make a clear and unequivocal statement later, which goes to the concerns counsel was raising about a lack of clarity in the policy. Plainly, there was not a lack of clarity in the policy. In 2015, Arsenault was proposing a different course of action, and that's why the court should read the email as not effective. If the court has no further questions, I'll return the remainder of my time, and we would urge that the court affirm the summary judgment in favor of Apelles. Thank you. Thank you, Mr. Brush. Mr. Valenzuela. Good morning, and may it please the court, Frank Valenzuela for Apelles, Netsker, and Richard. As this court recently wrote in Ridge v. Polko, qualified immunity represents the norm, and courts should deny a defendant immunity only in rare circumstances. And as we know from one of this court's Morgan v. Swanson decisions, educators are rarely denied immunity for liability arising out of First Amendment disputes. And this court should affirm the grant of qualified immunity to Apelles, Netsker, and Richard. Turning first to Mr. Netsker, the court should affirm the grant of qualified immunity because Ms. Oliver did not establish a violation of any constitutional right, and certainly none that were clearly established. The facts, the key facts, are undisputed. Ms. Oliver had Mr. Netsker as a teacher only one school year. That was a 2014-2015 school year. On November 3, 2014, that was the first time that she remained seated for the pledge, and she didn't remain seated for the pledge quietly. She was typing on her computer looking for a class assignment that Mr. Netsker had indicated was missing, and the typing was so loud that he was across the room with his back turned toward her, looking at the flag, and he could hear her typing. And finally, it is undisputed that Ms. Arsenault, Ms. Oliver's mother, had not previously submitted a written request under 25082 prior to November 3, 2014. In fact, any alleged 25082 written request did not come until the following school year, November of 2015. At the end of the 2014-2015 school year, Mr. Netsker had left the employ of Klein ISD. He was no longer employed when that first email arrived at the district. So under these facts and in this context, there is no violation of constitutional right. But even if the court were to find a violation of a constitutional right, Ms. Oliver has not cited case law from the time of Mr. Netsker's alleged misconduct, clearly establishing that it was unlawful for him to attempt to enforce a pledge recitation requirement that tracked a presumptively valid state statute that has an exemption request in it. Now, in Ms. Oliver's appellate briefing, I think it may have been alluded to this morning, Ms. Oliver tries to raise a new argument that notwithstanding 25082's validity and express exemption process, that Ms. Oliver could have simply chosen not to participate without complying with the statute's requirements. That argument is novel, it's meritless and should be ignored. First off, Ms. Oliver waived the argument. It was never raised before the district court. Second, we still end up in the same place. Mr. Netsker is entitled to qualified immunity because a novel argument does not defeat qualified immunity. And third, that argument violates the text and the structure of 25082. Clearly, the legislature knows how to provide for exemptions. It did so in 25082C. We urge the court to follow the maxim inclusio unius est exclusio ulterioris. The inclusion of one means the exclusion of the other. The legislature chose a particular exemption to include, and this court should not read an additional exemption into it. I do want to point out that in her complaint, Ms. Oliver had a compelled speech claim having to do with a cell phone issue. She has abandoned that claim by not providing any briefing concerning that incident at the summary judgment stage or an appeal. Turning to Ms. Richard, this court should also affirm the grant of qualified immunity in her favor because Ms. Oliver did not show the violation of a constitutional right and certainly not of a clearly established one. And in addition to that, Ms. Oliver largely failed to provide any competent summary judgment evidence at the summary judgment stage to support her claims. The only claim Ms. Oliver has ever pled in her five complaints against Ms. Richard is a First Amendment retaliation claim. Before getting into my prepared remarks, I do want to point out that this morning, during oral argument, opposing counsel mentioned that the district court's biggest mistake was having to do with the first email. Ms. Richard still gets qualified immunity because the district court's decision did not depend on the presence of a 25082 written request. There were independent grounds why Ms. Richard was awarded and granted qualified immunity. It had nothing to do whether the first email or the second email qualified, Ms. Richard still got qualified immunity. To prevail on a First Amendment retaliation claim, a plaintiff must show that she engaged in a constitutionally protected activity that the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in those activities, and finally, that the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected conduct. Ms. Richard submits that on appeal, Oliver has waived her retaliation claim. She has not briefed or argued the elements of that retaliation claim. Even granting for the sake of this argument that she has discussed engaging in a constitutionally protected activity, she has included no briefing whatsoever having to do with the second and third prongs of the chilling a person of ordinary firmness, nor of the substantial motivation, Richard's substantial motivation against her protected activities, allegedly, of course. Instead, Ms. Oliver asserts that Richard, in her briefing, asserts that Richard had some sort of institutional responsibility. I'm not sure what that means. Ms. Richard was a teacher, has always been a teacher, has been a teacher since 1997. She is not an assistant principal. And obviously, Ms. Oliver cannot plead a new cause of action now on appeal. The other thing that Ms. Oliver does on appeal in her briefing is that she tries to find a new factual basis for her retaliation claim. Now she is claiming that Ms. Richard allegedly yelled at her, kicked her out of her classroom and slammed the door. This is on page 46 of her briefing. Ms. Oliver did not raise these allegations as a basis for her retaliation claim at the summary judgment stage. She is now making a new argument. Those allegations were pled in her complaint, but they were not a basis for her summary judgment argument. Nor does Ms. Oliver cite any evidence, record evidence, in her briefing. The only thing she cites, too, is her own complaint, and to the recitation by the district court of facts in the summary judgment order. The only evidence is Ms. Richard's evidence that the events did not happen. Now at summary judgment, she based her retaliation claim on two events. One was a tournament, and the other one was Ms. Richard allegedly being dishonest. And neither of them suffice. The tournament, the undisputed facts, is that during a Saturday in the fall of 2017, Ms. Richard was hosting a debate tournament at the high school. Ms. Oliver got into an argument with a male student. The male student used profanity towards her. She responded in a boorish fashion, but also reported the student to Ms. Richard. Ms. Richard briefly investigated. She contacted Ms. Walters, the assistant principal. Ms. Walters told Ms. Richard to refer to the assistant principal on the campus, Ms. Wesley. And Ms. Wesley said, look, tell them either behave or go home, and I'll take care of it on Monday. In other words, two days in the future. And that's what happened. She took care of it two days in the future. Ms. Oliver apologized to the male student. The male student apologized to Ms. Oliver. This is not a constitutional violation. And certainly Ms. Oliver has not shown how, did not explain how Richard's behavior in delaying action over a weekend, allegedly, would chill a person of ordinary firmness. There's just no clearly established law there. And as for the allegation on summary judgment that Ms. Richard claimed that Ms. Oliver was dishonest and talked her down, the only evidence is Ms. Richard's evidence denying that any such thing actually happened, and it's in her appendix. It's in the record. Ms. Oliver did not support her contentions with one page of competent summary judgment evidence. And it's a big appendix, and there wasn't a single page. If there are no questions, I yield the rest of my time. Thank you. Thank you, Mr. Bellow. Mr. Callinan, you've saved some time for rebuttal. Mr. Callinan, both counsel have argued rather strenuously that to the extent that you may have otherwise pled some claims, that you either waived them through non-briefing, non-citation of record, et cetera, et cetera, et cetera. So first off, do you acknowledge, fade a brief, or cite the various claims? And if that's true, what are you left with? Well, Your Honor, I believe that our extensive briefing and reference to the record speaks for itself. I believe that the recitation of what the opposing or the defendant's state of the facts are something for summary judgment. The majority of this case was dispensed upon upon motion for summary judgment, and they're talking about this fact said this, this fact said that. Well, this sounds like something for a jury. Well, I heard their arguments being not so much about facts, but arguing that you waived legal arguments with respect to whatever the facts are. And I just want to be clear on your view on whether you made the legal arguments, whatever the facts are in the record, on appeal. That's why I asked you when you were up before, what's the relief you're looking for? So you said no injunctive relief. You said damages. You've heard counsel in terms of going back through. So just you can say it succinctly, not a. Certainly not. I believe that in this shortly in my in the appellant's principle brief. Counsel, you ought to be able to tell us without looking through those papers. I mean, you've been living with this case for a while. I'm super serious. You got a First Amendment claim. You should be able to look up here at us and tell us the answer to this and not going back through the pages. I'm not trying to trick you. I'm just asking a question. Yes, this is a First Amendment claim. That's correct. We don't have an establishment of religion claim. We've abandoned that. Regarding the constitutionality argument of the state statute, we don't argue whether it's constitutional or not. But once again, the state statute does not tell Mari to do anything or the parents. It tells the school district. You're not challenging the constitutionality of the statute. I'm simply asking you, what's your best argument to us that there is a legal error below of which you should get relief? Counsel said you waived a whole lot of things. I'm just asking, what are you left with? I'm not trying to trick you. If you don't have an answer, that's good. If you want to submit on it, that's good. I will refer the court to what I earlier said, but I will repeat it, and that is that notice, the first notice, was notice under the statute. If you read what the statute says by its very words, you look at what Ms. Arsenault did when she was the mother of the 17-year-old, or at that time I think she was 15. You argue that the first notice complies with the exemption that the statute allows. Is that what you argue? That's correct, Your Honor. Okay. That was not hard to really say. I did say that before, Your Honor. Well, it's your time. It's your case. So the Supremacy Clause of the United States says that the federal laws and the Supreme Court rules, not state laws and state rules. So because a state law comes along and said, oh, by the way, that Supreme Court case that you had in 1943, we're going to alter that for you. I don't believe that that gives rise to a qualified immunity issue. Furthermore, I think Barnett in 1943 extinguishes the qualified immunity argument, as did the cases of Morris v. Frederick. 551 U.S. 393-409 in 2007 says that schools can only regulate indecent and lewd speech, speech about illegal drug use. And when a student misrepresents the school, such as in a school newspaper, that Supreme Court case says nothing about what we have at issue here. So when we look at this, we see that the extremely important right, as a matter of fact, is in the First Amendment of the Constitution, not the 37th, is the freedom of speech. And that must be upheld, whether it's speech on the left, speech on the right, or speech for somebody who's a moderate. And we want this court to uphold the freedom of speech. Thank you. Thank you, Mr. Kalman. Case is under submission.